All right. We'll call our case this morning. It's 22-1864. Consumer Financial Protection Bureau v. National Collegiate Master Student Loan Trust et al. Good morning, Mr. Ellis. Good morning, Your Honor. May it please the Court, Jonathan Ellis on behalf of the Defendant Appellant Trusts. I'd like to reserve three minutes for rebuttal. Sure. The District Court erred here in two independent respects. On the statute, the Court found that the trusts were covered persons based on a rule that an entity engages in any activity where it contracts for a third party to undertake a task that is central to its business, regardless of the nature of that contractual relationship. The CFPB does not defend that broad rule, and this Court should not endorse it. It is inconsistent with the plain meaning of engage, which requires direct and active involvement in an activity. It's undermined. Where's that coming from, direct activity, number one? And number two, why isn't there direct activity here where all of the thousands, I guess, of lawsuits that are involved, all name the trust as a party? The agreements you have with the servicers make it clear that they're basically your agents. So where is that? Help me understand your saying this is not engaging. I think there are two parts to that question. I'll try to address both, Your Honor. With regard to where the direct and active meaning of engage comes from, we think it's in the dictionary definitions, which say be active, to involve oneself. We also think it's reflected in the case law that interprets that term. I think if you take, for example, the Ninth Circuit's decision in Harrow, which held that dispatchers are not engaged in fire suppression, even though they send out the firefighters to the fire because they're not actively putting out the fire. Dispatchers are not the agents of the fire person. Right. So with regard to that latter point, I think, you know, we don't think that agency principles are the right way to go about determining who is, what the trusts are engaged in here. We think the vicarious liability principles, if they come in at all, come in at the next step. If you conclude that an entity is, in fact, engaged in the offering or providing of a consumer financial product or service, then you can ask whether they would be vicariously liable for the conduct of others. I don't want to interrupt, but I was finished with a thought there. Even if you think that's not right, even if you think that agency principles, that the trust's agents should be, their conduct should be attributed to the trusts, this Court has said repeatedly that agency requires control. And the complaint here doesn't allege that the trusts themselves or their trustees control the subservicers or the collection agencies. They made a deal, right? They made a deal with these subservicers. They contracted out this job, right? Well, the trusts themselves are these unique animals, right? If we accept your logic, then folks could avoid liability or repercussions from the Consumer Protection Financial Bureau by simply contracting out the work. I don't think that's right for a couple reasons, Your Honor. I think, number one, these are not operating entities. Most entities are not going to fit the description of the trust, passive securitization instruments. There are lots of other actors in these schemes and these deals that actually do engage in conduct. And I think, as I say, even if you want to interpret or incorporate agency principles, I still think you've got to have control. Now, that doesn't mean that the trusts are beyond all reproach here, that there's nothing that can be done. You know, it only means that they aren't covered persons. There's lots of other actors. The CFPB hasn't argued that the trusts fit any of those other entities that are subject to their authority under the CFPB, CFA. And they've also alleged, argued that- It's to the benefit of the trust that the recoveries are being made, right? So not to the benefit of the trust. Directly to the trust, again, they're not operating entities. They don't have employees or officers who are profiting or losing. They have assets. They are the plumbing in these deals. Which they lend out, right? I'm sorry? They have assets for loans and collecting loans. The trusts have to hold title to the loans here, but they hold them to the benefit of the note holders. And they really act as just the sort of passive plumbing and the conduits through which the proceeds from those assets make its way to the note holders, the investors, institutional investors in these notes. We don't think that those note holders should be subject to liability based on the misconduct of services. We don't think those note holders are engaged in offering or providing- What if the note holders had entered into an agreement with the services here that had the same language that the trusts have? And that language includes in several different spots the phrase engage in. So what if the note holders had that same kind of contractual relationship? Wouldn't that subject the note holders to the statute? I don't think the right way to figure out how the CFPB, CFBA applies to the trust is to look at the language that happens- We can't do that because then you lose. Well, I don't actually think we would, though, Your Honor. The second point I'd make is that the CFPB has pointed to the purposes of the trust, for example, that use the word engage. But what that actually says is that one of the trust purposes is to engage and to enter into transactions and to provide for the servicing of these loans. I think there's a difference between providing for servicing and actually servicing. They don't- Engage in those activities and to enter into such agreements as are necessary. Rule number four, to engage in such other activities may be required in connection with the conservation of the trust property and distributions to owners. That sure sounds like they're not only engaged in it, they're knee-deep in it. Even if you- So I don't think that's the right way to understand this structure, Your Honor. I think that because the trustees aren't actually engaged, don't take a direct and active role in any conduct, they have no employees, and the trustees of those trusts who direct and manage those affairs aren't either involved or engaged directly in the servicing of these loans. So even if you think that all the other- They directly contract folks to service the loans, right? And they directly contract folks to pursue bad delinquent loan holders. The trustees have entered into transactions on behalf of the trusts to provide for the servicing of these loans, but they aren't engaged in the servicing. They aren't the ones doing the servicing. They're engaged as judge- Sorry. They're engaged in selecting the people who are going to collect the loans. The trusts are not, Your Honor, and neither are the trustees. The entities that- Then who picks them? The special servicer is responsible and the subservicers. The complaint alleges that- They work for who? The subservicers don't work for anyone. They are an independent company. CSI is an independent entity here that is an independent contractor, as the district court recognizes. Where does the money go? The money is flowed through to the note holders, the investors. That's where it goes. And I don't think that investors, because the money ultimately makes its way to investors, that those investors are engaged in servicing. They benefit from the servicing. That's how this scheme works. That's how the structure works. But they aren't engaged in the servicing. I think the CFPB's regulatory authority is targeted at the actors who are actually engaged in the offering or providing of consumer financial products or services. That's who they need to target. Now, again, I don't think that means that they can't seek remedies against other actors. As I say, there are lots of other individuals or entities that can be subject to enforcement. The CFPB has argued that they could bring an FDCPA case against the trust, that they were subject to a cause of action under the FTCA. And they've argued in other cases that they can name relief defendants that are not themselves covered persons. They just haven't alleged any of that here. Who should they sue? Well, they have entered into a consent judgment with the subservicer here. And there's no suggestion that that consent judgment is ineffective. And the subservicer is still here. It's a reputable business. They've intervened in this case. And they continue to exercise their role in the scheme and comply with that consent judgment. And who picked the subservicer? The special servicer. Okay. And who picked the special servicer? The special servicer was into a contract with the trustees. Okay. So it was the trustees who picked the special servicer. That's right. But having a contractual relationship, Your Honor, is not enough to hold someone vicariously liable. Contractual relationship to do what? The special servicer is in charge of overseeing the servicing of these loans and the collecting. Okay. Right. But they're not controlled by the trusts or the trustees. That's very clear in the agreements. I'm sorry? Are they controlled by their contractual agreement with the trusts? The subservicing is overseen by the subservicer, and the subservicing is overseen by the special servicer. There are for-cause removal restrictions. So you can – the industrial trustee can, in certain circumstances, remove a special servicer. This Court well knows from the 2020 appeal about how that works. But that's not the level of control that is required for vicarious liability. And maybe more to the point, no one's ever engaged in that analysis here.  If you're right, there's precious little left of the Consumer Debt Protection Act. I'm sorry? If you're right, there's precious little left of the Consumer Debt Protection Act. All the creditor has to do is go through a series of contractual agreements through which they've removed themselves from direct control so that it can't be said they are engaging in servicing of the underlying debt. And therefore, they can't be a covered person. That doesn't mean that they can't be a service provider, an affiliate. They can't be a relief defendant. They couldn't be subject to enforcement on a number of other ways. All it means is they couldn't be a covered person, because the CFPA defines covered persons as those that directly involve in the offering or providing. Are there identification agreements or language in these contracts? There is identification agreements. I mean, yes, sir. Yes, Your Honor. I think you should think to covered persons from away from engaging, I understand why you're doing that. But the definition is much broader than just covered persons. A covered person is one who engages in, isn't it? I'm sorry, could you? You used the term covered persons. They're not a covered person. Yes. Isn't a covered person one who engages in certain activities? That's right. That's right. So the statute defines covered persons as service providers. The UDAP prohibition applies to both. It also defines related persons who can be covered persons, and it defines affiliates. This case concerns the only allegation that the CFPB has ever made is that the trusts are themselves covered persons. And in order for that to be true, the trusts have to engage in the offering or providing of a consumer benefit. What do we do with this identification language? I'm sorry? What relevance, if any? I think none, Your Honor. None, really? Okay. What about the contractual agreement between the owner trustee and the trusts? Does that not provide that the trusts will participate and will engage in servicing of student loans? It does not. I was just having a discussion with Judge McKee. What it provides is that they will engage in certain activities, including, and then this is on JA107, to enter into the trust-related agreements and to provide for the administration of the trust and the servicing of the loans. Okay. To me, I can easily consider that to be engaging. So I think that I disagree with you that that is the same thing, that providing for servicing is the same as servicing. But even if you disagree with that, that's the purpose of the trust. And that's the debt collector definition in the FDCPA includes a primary purpose prong in which an entity can be held to be a debt collector because of its purpose. The CFPA does not include an analogous provision. It only includes the provision that has the verb, to engage. And that requires action. That requires direct and active involvement that the trusts don't have in the servicing here and that the complaint has not alleged that they have. Except that they have, who created the special, special servicer? Who created that position? The special servicer is, the U.S. Bank was appointed to be the backup special servicer and then the special servicer by virtue of the special servicing agreement, an agreement that was entered into by the trustees and the bank. By the trustees. But, again, entering into a contract where you don't control the conduct is not enough for vicarious liability principles, even if you think that's the right way to figure out what an entity engages in for purpose of the CFPA. You control the contract in that if you don't do what I'm asking you to do, I'm going to fire you. You have, there is, yes. But that's true of any independent contractor, right? I can hire a painter to come paint my house, and if he doesn't do a good job, I can fire him. But if he's not my employee, I'm not vicariously liable for what he's doing. If I don't have control over the way he does the painting, then I'm not vicariously liable for the way, for his wrongdoing in doing so. That's just agency principles. The court did not apply those here. I'm sorry? But the painter's not the agent. If I ask the painter to go to the store and buy a certain kind of paint and the painter does that, now maybe there's some kind of agency relationship because of the instructions I give to the person. But the situations you're picking out, the painter, the fire dispatcher, those are not agency relationships. Because of the lack of control, Your Honor. I think the interlocking agreements here are complex. I acknowledge that, and this court knows that from its 2020 appeal. But at a minimum, I think somebody's got to do the analysis of those agreements and see if the control, the requisite control is there, if indeed agency principles are going to be the way that the court goes about determining what an entity is engaged in for the purposes of the CFPA. We don't think that's the right approach, but if that is the right approach, I think somebody's got to do that analysis of these agreements and see if there is the requisite control. We think there is not. And the district court didn't engage in that. It said that it was the independent subservicers were the independent contractor, and it relied on the purpose, right? It relied on the fact that the servicing was central to these agreements and cited Barbato, which turns on the principle purpose prong of the debt collector definition, which is not in the CFPA. Okay. We've also – I guess I'm out of time. We'll see you shortly on rebuttal. Wonderful. Thank you. Good morning. Good morning. May it please the court, Kevin Friedel for the Consumer Financial Protection Bureau. The court is right to be skeptical of the trust statutory argument, and it could affirm on the grounds that the servicer, the special servicer, and subservicer were acting as agents of the trust, but I want to actually start by emphasizing a different aspect of this, sort of a different basis for affirmance, and this relates to the point that Judge McKee raised early on, that the trusts here are business entities empowered under state law to sue and be sued, and they exercise that authority on a massive scale, bringing almost 100,000, perhaps more, debt collection suits against consumers. They were the named plaintiffs in each one of these actions. That alone is enough to show that they engaged in the offering or provision of consumer debt collection such that they can be covered persons under the statute. It's a commonplace that the parties to a case are the ones litigating it, that they are engaged in that litigation, notwithstanding that, of course, it's always true in the case of a business entity or any sort of legal entity that they are not appearing in court themselves, they're acting through their attorneys, but they are nonetheless engaged in that litigation. As Judge Roth wrote for the court last year in a case called Burton v. Shamp, quote, in general, a party to litigation is one by or against whom a lawsuit is brought. That's clearly correct in sort of ordinary uses, and as a matter of law, the plaintiff brings a lawsuit, and they weren't just sort of nominal plaintiff's figureheads here. These were their rights being asserted in each one of these actions. The attorneys were coming into court on behalf of the trust, asserting claims that the consumer defendant owed money to the trust. When they succeeded in those actions, sometimes through default judgments, the relevant judgment was entered for the trust, and I think it's clear then that they were the ones actually bringing these suits. Now, their only response in their reply brief is to point to key TAM actions and try to draw some sort of analogy there, but at the risk of stating the obvious, these weren't key TAM actions. There was no relator. They weren't brought under the False Claims Act. The trusts were both the real party in interest and the named plaintiff, and there was sort of no ambiguity about that that we can see or that the trusts have pointed out here. And a sort of related point, of course, is that these cases were not being actually, in the most literal sense, litigated by the trusts themselves. It was by attorneys. Those debt collection attorneys entered appearances on behalf of the trust, filed briefs for the trust, advocated for their interest in doing so. They were acting, just as is true in any attorney-client relationship, they were acting as agents of the trust. So I think the court could look at the special servicer and the subservicer and these hundreds of pages of contracts to affirm. It could also just look at the fact that their attorneys were going into court and pressing these suits on their behalf,  debt collection, just as much as they are engaged in this litigation, engaged in this interlocutory appeal that they filed, notwithstanding that, of course, that's actually being carried out by their attorneys on their behalf and as agents. The appellant is claiming, as I understand it, that this relationship is not adequately alleged in the complaint. Well, so we do describe in the complaint the tens of thousands of debt collection suits that they filed, and I don't think at the motion to dismiss phase we really had to do any more. I mean, they're business entities. It would be impossible for them to press those suits pro se. Of course, they did it through attorneys, and they don't dispute that they did. And I think that those allegations are sufficient at this point. I think the other thing I would say here is the court doesn't have to take our word for it. If it's skeptical in any way here, this is what the trusts themselves have said in numerous of these debt collection suits. So we cite on page 22 and 23 of our brief, I think it's five or six examples, where the consumers in these cases have sought to dismiss the claims, or filed sort of other actions trying to collaterally attack judgments entered in these debt collection actions, and sought to dispute that the trusts were really the right party to be bringing the suit. They didn't have the capacity. They shouldn't have been the ones in court, and the trusts vigorously pushed back on those, insisting, no, we, the trusts, have the right capacity standing to be here. In other words, we're the right party to be engaged in this debt collection, and we think that they were exactly right about that. Let me ask this. If Mr. Ellis is correct in his argument, is there much left of the Consumer Finance Protection Act? Consider whatever it is, the CF, whatever it is, the act we're talking about. Because it seems to me that, as the questioner asked Mr. Ellis, that any creditor with an ounce of intelligence could very easily arrange, enter into an arrangement with a debt collector that puts the debt collector off with the appearance of being an independent contractor until they circumvent the protections of this act. I think that's exactly right, Your Honor. I mean, I wouldn't want to concede that, you know, a scheme like that would actually succeed. There might be some sort of, maybe they'd be liable under the FDCPA, maybe there'd be other arguments. I agree, I think it would open obvious avenues for evasion, and I think that was perhaps, you know, part of what drove decisions this court, like Barbado. And before that, there was a case, Paulus, that found essentially that owners of debt couldn't escape the reach of consumer protection statutes. In Barbado, the FDCPA, so a different statute, but I think the point holds here that you can't avoid the reach of the statutes just by sort of bringing someone else in, and especially in the context of the covered person provision at issue here. I mean, the language we're talking about is engaged in the offering or provision of, here, consumer debt collection, and I think just the mere fact of recruiting those people, bringing them in, setting up this sort of process or the system for bringing debt collection suits in the trust name on their behalf and for their benefit, that's an additional way that the trusts engaged in this conduct. They don't, you know, that didn't insulate them from the debt collection. It was another thing they did to sort of make sure they were collecting on the student loans that they held or claimed to hold. You know, I guess I would address also this argument about direct or indirect involvement, and, you know, we don't think this language is not in the statute. It's something that the trusts have sort of tried to interject as a way of avoiding liability here, but I just want to emphasize that, you know, we have alleged that they engaged in offering or provision of debt collection as directly as it is possible for a business entity to do when their attorneys came into court on their behalf and demanded payment on these debts. I don't know what else they could have done. You know, the trusts, of course, again, can't appear in court themselves in the most literal sense and advocate for their interests, so we don't think the court needs to engraft that onto the statute, but it's also irrelevant here because the allegations show their direct engagement and involvement in this process. Unless the court has other questions on that, I would just briefly address the removal provision argument that they've also raised, and we think this is just squarely foreclosed at this point by the Supreme Court's decision in Collins, both because this case comes before the court on a motion to dismiss an amended complaint that was filed only after the Supreme Court held that the removal provision was inoperative. There's no question that the acting director at that time could be removed at will, and it's the same for every, you know, subsequent official to have headed the agency. Collins makes clear you can't evoke an invalid removal provision to attack an action that was undertaken or overseen by an official to whom that provision didn't apply. I think that would be the simplest way for this court to resolve that issue. But even if it disagreed, you know, there's also the fact that under Collins, they would only be entitled to relief because of that removal provision if they could show that it had harmed them in some way. And as Judge Bibas noted, you know, the Bureau has now pursued this action under five different directors or acting directors. That's actually every single director we've ever had appointed by three different presidents. Four of them were removable at will by the president, and I think there's really no argument remaining that the removal provision harmed them or affected this case in any way. And, indeed, they don't actually allege any sort of causal connection between that provision and this case. I think unless there are any further questions, I would leave it there. Thank you. Thank you very much. Thank you, Your Honor. Just a few points in rebuttal. I want to address, again, the name plaintiff, the fact that the trust are named plaintiffs in these suits. Who is named in those suits is a function of the procedural law of the forum and state law, Delaware law. I don't think it controls who is a covered person under the CFPA. Doesn't that have to be a party with some interest in it? I don't want to use the term real party interest, but maybe that is. Well, it is real party interest. That's correct. And so where they are. The trust hired the lawyers, right? No. The allegation, the complaint alleges that the lawyers are hired by the subservicer, not the trust themselves. I'm sorry. Hired the special servicer who hired the subservicer. So you're saying we're just going one level. Would it be okay if we go three levels? It's not okay? I mean that. No, Your Honor. I think the question is not about how many levels. It's about the control. And the complaint, you know, I don't think the CFPB stood up and said that they adequately allege control here. But regardless of what you think the allegations must say here, I think that the question has to be about if we're going to go down the agency path. We don't think that's the right way, but the question has to be about control. And no one's done an analysis of these agreements to see, or the complaint for that matter, to find if there's the requisite control here. I think that analysis has to be done. The last thing to say about the CFPA, and I'd love to say a word about the constitutional question, is just to reiterate what I tried to address before. The CFPA addresses specific actors here. It articulates based on their involvement in the activity. The only actor at issue here is whether the trusts are covered persons. And what the CFPA says, in contrast to the FDCA, for example, or the FDCPA, is that a person can only become a covered person if they're actively engaged, if they're engaged, which we think means active and direct involvement. That's the only question here. It's not about the full scope of the UDAP authority or authority under other provisions. You agree then there's no issue about who the real party in interest is? So I don't think those suits are before this Court, but the fact that the trusts are named is a function of the real party in interest rules there. On the constitutional issue, I would just say that we do think that if you get there, this case needs to be dismissed because it was initiated by a director who was undisputedly not subject to the adequate supervision by the President. We don't think that Collins actually changed the accepted framework that Judge Noriega applied, but even if it did, we think the trusts have made the showing that the majority in Collins said would clearly justify a retrospective remedy. They offered two examples there. The Court did. It said, one, if the President had been stymied from removing a director by a court, and the second, if the President had expressed displeasure with the director and indicated that it would have removed the director, if not for the unconstitutional removal restriction. We filed this, right? I'm sorry? We filed this with a director that didn't have those issues. They amended the complaint. Yes, that's right. But it was not within the time of the statute of limitations. In fact, it had to rely on the relations-backed doctrine. We don't think that the amended complaint is a remedy for the here-and-now injury that was caused by the initial complaint. No court in the country ever has ever held the amending of a complaint is a remedy for that here-and-now injury. Ratification is. And ratification must be timely. But it didn't need to be amended under Collins. I'm sorry? It didn't even need to be amended. It did. And I'd love to address that if the ---- Please do. Okay. So those two examples, the CPB complains that we haven't shown a causal connection between the removal restriction and this suit. But those two examples, the majority in Collins, didn't require a connection either. The first example is the clearest, right, that said if the President had tried to remove the director before an action was taken and was stymied by a court, that would be enough to clearly justify a retrospective remedy. Not a whiff of connection or nexus in that example to the agency issue that was that issue, except that it was a temporal one. That the aid that the director would have been removed but for that restriction before it took the action. And that makes sense if you take a step back and you think about the court's other separation of powers cases. In an appointments clause violation, there's no requirement that there be a connection that you show that the properly appointed officer wouldn't have taken the action. It's enough that he is a usurper. And it shouldn't have been in that position to begin with. And if the director would have been removed before he brought this suit, he's the usurper in the exact same way. He was exercising executive power that he should not have possessed. And that's why a remedy is justified under these principles. That's the short prejudice. The prejudice is being, is the here and now injury. The court, the Supreme Court has said that in Bousher and Free Enterprise. Said it again last month in Axon. That's an abstract but a real injury. That's prejudice. And that's enough to justify a remedy here. I'm sorry, I missed that. What's the prejudice? The prejudice is the here and now injury that is suffered by anyone who is the object of executive power by someone who's not subject, does not supervise adequately by the president. The court's decision in Axon last month and FTC reiterated that. They said it's abstract, but it's real. And in Axon they said that that was enough to justify bringing a suit before the proceedings ever ended because it demanded a remedy. And we think the same is true here. I was speaking only for myself here. Let's say you've given a remarkably strong defense of a remarkably weak argument. Well, thank you, Your Honor. I hope that as you go back and reflect on these arguments, I don't think we're asking for a whole lot here. I think we are asking for that on the statutory question that somebody engage in the analysis of the agreements here and decide, even if you think agency is the right way, that there's the right control. And on the constitutional question, Your Honor, I don't think we're asking for much to say that there should be some remedy. You're asking for a lot. Don't distract me with your strong defense. I'm not asking for much. Thank you, Your Honor. Good to see you. We're adjourned. Have a good day, everybody.